IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID WARNER AND DEBRA
GONZALES, DESMOND WARNER
AND NICOLE WARNER,

      Plaintiffs,

  vs.                                          No. 10-CV-597 WPJ/KBM

VILLAGE OF RUIDOSO, CITY MANAGER
DEBI LEE, MAYOR L. RAY NUNLEY,
VILLAGE COUNCIL MEMBERS,
MICHELE REBSTOCK, RON HARDEMAN,
GREG CORY, ANGEL SHAW, JIM STODDARD,
DON WILLIAMS, RUIDOSO POLICE CHIEF
WOLFGANG BORN, (RUIDOSO POLICE OFFICERS)
BOB LAYER, ERIC AMENT, JOE MAGILL,
JONAS PROCTOR, RAY MERRITT,
JOHN OBERMILLER, JOHN DOE 1, AND 2
POLICE DISPATCH (NAME UNKNOWN),
NEW MEXICO STATE POLICE OFFICER
CHEYENNE WOLFE, JOHN DOE, INDIVIDUALLY
AND IN THEIR OFFICIAL CAPACITY, ALSO
WITNESSES (PARTICIPANTS) WHO WERE
IN THE VEHICLE WITH DECEASED -
ERIK CARK SIEGEL, CHANEL C. MOLINA,
AND (SAVANNAH JAMES, A MINOR AND
HER LEGAL GUARDIAN), INDIVIDUALLY
AND IN THEIR PERSONAL CAPACITY,

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS
AND
MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' STATE LAW
TORT CLAIMS**

THIS MATTER comes before the Court upon two motions filed by Defendant Village of

Ruidoso Defendants[1] on June 25, 2010: a Motion to Dismiss Plaintiffs' Constitutional Claims **(Doc. 4)**, and a Motion for Partial Summary Judgment on All of Plaintiffs' Tort Claims **(Doc. 5)**. Having considered the parties' briefs and the applicable law, I find that both of Defendants' motions are well-taken and will be granted.

## Background

Plaintiffs filed this lawsuit in the County of Lincoln, Twelfth Judicial District of New Mexico on April 28, 2010. Defendants removed the case to federal court on June 22, 2010. Plaintiffs allege that the Defendants, while acting as employees and agents of the Village of Ruidoso, negligently performed an investigation into the apparent accidental death/suicide of Plaintiffs' decedent, Davis Warner, and that they were harmed by Defendants' inadequate investigation of the shooting.

On December 6, 2007, Davis Warner apparently shot himself in the head. The investigation uncovered information showing that Mr. Warner was known to joke or play around with a small firearm he was known to carry on his person and pretend to shoot himself. Defendants did not find any evidence to support criminal charges. The complaint asserts that Plaintiffs believe the death was the result of a murder, and that Defendants either did not adequately investigate the death, or conspired to conceal the purported murder.

The complaint was filed by Davis Warner's father (David Warner) and siblings and alleges a denial of the right to familial association and various torts such as spoliation of evidence, loss of consortium, intentional infliction of emotional distress and claims of

---

[1] These Defendants include: the Village of Ruidoso, Debi Lee, L. Ray Nunley, Michele Rebstock, Ron Hardeman, Greg Cory, Angel Shaw, Jim Stoddard, Don Williams, Wolfgang Born, Bob Layer, Eric Ament, Joe Magill, Jonas Proctor, Ray Merritt, and John Obermiller.

conspiracy.

**I.      Legal Standard**

Defendants have raised a qualified immunity defense. When raised in a motion to dismiss, a court's review of the qualified immunity defense is limited to the pleadings and the court must "construe the allegations in the complaint and any reasonable inferences to be drawn from them in favor of [the] plaintiff." *Dill v. City of Edmond*, 155 F.3d 1193, 1203 (10th Cir.1998). The complaint must plead sufficient facts, taken as true, to provide "plausible grounds" that discovery will reveal evidence to support the plaintiff's allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Once a defendant pleads qualified immunity, the burden shifts to the plaintiff "to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred." *Pueblo Neighborhood Health Centers v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988). A right is clearly established when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law. *Beedle v. Wilson*, 422 F.3d 1059 (10th Cir. 2005). If a plaintiff meets this burden, the defendant must then satisfy the usual summary judgment standard of showing that no material facts are in dispute and that he or she is entitled to judgment as a matter of law. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir.2002).

**II.     Motion to Dismiss**

The Village Defendants ("Defendants" for purposes of this Memorandum Opinion and Order) seek to dismiss Plaintiffs' first cause of action premised on the denial of the right to

familial association, presumably brought under 42 U.S.C. § 1983.[2]  Defendants contend that Plaintiffs fail to articulate a clearly established federal right, nor do they allege conduct by the Defendants which violated that right.

Plaintiffs have not responded to the motion to dismiss, which under this Court's local rules, constitutes consent to grant the motion.  D.N.M.LR-Civ. 7.1(b).  In the reply, counsel for Defendants states that counsel for Plaintiffs has advised counsel that he does not intend to oppose the motion, although Plaintiffs may seek leave to file an amended complaint. Doc. 13 at 4, n.1.

Defendants' arguments presented in this motion are legally supported.  The Tenth Circuit first recognized the right of familial association in *Trujillo v. Board of County Commissioners*, 768 F.2d 1186, 1188-89 (10th Cir. 1985), relying on the United States Supreme Court decision, *Roberts v. United States Jaycees*, 468 U.S. 609 (1984).  This circuit views the familial right of association within the "concept of liberty in the Fourteenth Amendment." *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993) (discussing the development of a right to familial association in the Tenth Circuit). Courts have applied a balancing test to determine whether a plaintiff's right to familial association has been infringed, which involves weighing the plaintiff's interest in liberty against the governments "asserted reasons for restraining individual liberty." *Lowery v. County of Riley*, 522 F.3d 1086, 1092 (10th Cir. 2008).  If Plaintiffs had responded to the motion to dismiss, they would have had the heavy burden of establishing that the movants violated clearly established rights.

---

[2]  There is no mention of § 1983 anywhere in the complaint, but given the description of the claim as a denial of the right to familial association, the Court can only presume (as Defendants have done) that the claim is based on federal law.

Defendants characterize the injury suffered by Plaintiffs as bystander injury, which is not redressable in a § 1983 cause of action. *See Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (A § 1983 claim "is a personal suit [which] does not accrue to a relative"). There is no allegation that Defendants' conduct contributed to David Warner's death, or that any conduct by Defendants was directed at Plaintiffs. Plaintiffs allege harm suffered by Davis Warner's death because of what they consider to be inadequate investigation into the shooting, but based on those allegations, the law regarding familial association is not clearly established such that the Defendants would have reasonably known that the alleged conduct violated Plaintiffs' constitutional rights. As a result, Defendants are entitled to dismissal of Plaintiffs' first cause of actions based on the right of familial association.

### III.    Motion for Partial Summary Judgment

Defendants seek summary judgment on Plaintiffs' state law tort claims because the complaint was filed outside the statute of limitations for claims brought under the New Mexico Tort Claims Act, NMSA 1978, § 41-4-5 ("Tort Claims Act").

Except for Plaintiffs' first cause of action which both the Court and Defendants presume is brought pursuant to § 1983, the remaining ten causes of action sound in state tort law. The Tort Claims Act provides governmental entities and public employees with immunity from tort suits unless there is a specific waiver of that immunity set forth under the Act. *Weinstein v. City of Santa Fe*, 121 N. M. 646, 649, 916 P. 2d 1313, 1315 (1996). The court must strictly construe any provision purporting to waive governmental immunity. *Armijo v. Department of Health & Environment*, 108 N. M. 616, 618, 755 P. 2d 1333, 1335 (Ct. App. 1989). Further, all tort actions "against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss,

5

injury or death." § 41-4-15(A).

Defendants contend that Plaintiffs' various tort claims are time-barred.[3]  Under Section 41-4-15(A), the limitation period begins to run from the time of loss, or injury. *Aragon & McCoy v. Albuquerque National Bank*, 99 N.M. 420, 659 P.2d 306 (1983).   Plaintiffs argue that the statute of limitations did not commence until they were told that the investigation materials gathered were not going to be released to them, and the investigation was not going to be reopened.  Their position is that they engaged in efforts to spur an investigation into their son's death, and that much of the delay between David Warner's death and the filing of the complaint was the result of a conspiracy and willful indifference exhibited by the Defendants in conducting the criminal investigation into the death.  Plaintiffs offer the following exhibits in support of their position:[4]

- May 1, 2008: Letter from Twelfth Judicial District Attorney to Chief Wolfgang Born of the Ruidoso Police Department, questioning the adequacy of the investigation.  The letter was written after David Warner contacted the District Attorney's office and relayed his concern over what he considered to be suspicious circumstances surrounding his son's death;

- May 12, 2008: Letter from David Warner to Chief Born requesting copies of evidence collected as part of the investigation;

- May 13, 2008: Letter from "CID Commander" Robert Layher notifying David Warner that the entire case had been turned over to the District Attorney, and referring Mr. Warner's requests for document release to that office;

- June 20, 2008: Letter from District Attorney to David Warner advising that after a review

---

[3] Defendants also mention in their motion that Plaintiffs' various tort claims are not based on any specific provision of the Tort Claims Act which waives immunity for Defendants as governmental employees.  Plaintiffs did not respond at all to this argument, and Defendants did not offer any further legal argument.  Thus, the Court leaves the issue where counsel left it, and addresses only the issue of the limitations period.

[4] The exhibits are attached to Plaintiffs' Exhibit 1 in the Response.

>of records and additional interviews, the conclusion was reached that no crime had been committed;

- October 15, 2008: Letter from District Attorney rejecting David Warner's request for documentation and a report of the investigation because no arrest was made and no crime had occurred.

On April 28, 2010, Plaintiffs filed the complaint in state court. In order for the complaint to have been timely filed on April 28, 2010, Plaintiffs's claims would have had to accrue no later than April 28, 2008.[5] Thus, the question is whether Plaintiffs had a sufficient factual basis to proceed with filing their state law tort claims by that time.

Plaintiffs rely on two cases to support their position that their state law claims did not accrue at the time of Davis Warner's death, but neither case is persuasive. One of the cases is an unpublished Tenth Circuit case, and the other is a published case from the District of Colorado.

In *Nicholas v. Boyd,* 317 Fed.Appx. 773, 2009 WL 721707 (10th Cir. 2009), the parents of a college freshman, Rio Nicholas, filed suit against the school on October 19, 2005, alleging that the school intentionally covered up evidence which suggested that the decedent was a homicide victim. Rio was discovered dead in the shower of his dorm suite on December 6, 2001. The school concluded that the cause of death was a self-induced drug overdose, but the parents suspected that their son was the victim of a homicide, and contended that the school destroyed evidence which made it impossible for them to bring a viable wrongful death claim against the individual(s) responsible for their son's death.

The district court held that the two year limitation period for the parents' denial of access

---

[5] In a footnote, Plaintiffs suggest that the applicable limitations period is three years, based on the law that applies to § 1983 cases. *See* Doc. 12 at 4 n.1. However, the claims at issue here are the state tort claims, not Plaintiffs' sole § 1983 claim, which is timely filed within the 3 year limitations period for constitutional torts.

to courts claim against the school employees began to run on May 7, 2003, when the decedent's father mailed a letter to the district attorney's office with allegations of foul play and police misconduct in connection with his son's death. At this point, the court determined that the parents knew or should have known of the injury alleged in their complaint. Thus, the suit was barred by the statute of limitations because it was based upon facts known for more than two years.  The Tenth Circuit affirmed the district court's decision.

    Plaintiffs also rely on *Stump v. Gates*, 777 F.Supp. 808, 822 (D.Colo.,1991), a case involving homicide that was initially determined to be a suicide. On May 20, 1984, the decedent's wife found decedent lying on his bed on his left side, with dried blood trailing from a hole in his right temple, and holding in his right hand a nickel-plated revolver near his face.  The decedent's body was cremated on May 23, 1984, and the coroner's office listed the death as a possible suicide, and the cause of death later was reported in the media as suicide.  Alleged improprieties in the investigation were reviewed by a grand jury, which issued a non-public report on December 14, 1989.  Finally, on June 14, 1990 – six years after the death – the chief judge of the state court district ordered disclosed to the plaintiffs a one line portion of the grand jury report concluding that the death was a homicide. On March 29, 1991, the plaintiffs filed a lawsuit asserting that the investigation was deficient in various respects.  The court concluded that the state tort claims are not time barred because neither the injuries, nor their causes as were later alleged in the complaint, were known or reasonably could have been known prior to disclosure of the grand jury's conclusion on June 14, 1990.

    The court in *Stump* applied the "discovery rule" to determine when the cause of action accrued.  Under this rule, the limitations period is tolled until the injury and its cause are discovered, or by due diligence should have been discovered.  It provides that the limitations

period begins "when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Dahl v. U.S.*, 319 F.3d 1226 (10th Cir. 2003). The rule is applied either where injuries are not initially manifested or the statute of limitations may begin to accrue before a party has all the evidence supporting its case. *See, e.g. Long v. Weaver*, 105 N.M. 188, 191, 730 P.2d 491, 494 (Ct.App.1986) (medical malpractice); *Maestas v. Zager,* 141 N.M. 154, 158, 152 P.3d 141, 145 (N.M. 2007) (medical malpractice); *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir.1995) (§1983); *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir.1993) (§ 1983).

    Plaintiffs assume, without any discussion, that the discovery rule applies to this case. However, the rule is used only in "exceptional case[s]," *Dahl*, 319 at 1268 – and this case does not fit into this category. The court in *Stump* applied the discovery rule to that case based on a determination that the defendants wrongfully deprived the plaintiffs of access to judicial remedies.[6] 777 F.Supp. at 822. Here, Plaintiff had all the information they needed on December 7, 2007 in order to make the allegations which are presented in the complaint. Plaintiffs allege that Defendants have hidden and conspired to spoliate evidence, but none of the alleged destroyed or hidden evidence needed to be discovered by Plaintiffs before they were able to file the complaint.

    *Nicholas* is factually distinguishable. First, the claims in *Nicholas* were brought under § 1983. The question in that case was whether plaintiffs knew or should have known that their rights were violated within the two-year statute of limitations pursuant to Colorado state law. In that case, the plaintiff had no reason to suspect wrongful death or homicide. There was no

---

[6] Plaintiffs in the instant case do not allege a denial of access to courts. Instead, they allege some undefined harm arising from the inadequate investigation of Davis Warner's death.

9

indication that the parents suspected foul play until the decedent's father mailed a letter to the district attorney's office. Similarly, in *Stump*, plaintiffs had no reason to believe they had a claim until the grand jury determined that the death was not a suicide. All evidence, including the police investigation as well as the coroner's report, had before that point concluded that suicide was the cause of death. There was no suggestion that plaintiff knew or could have suspected that the death was anything other than a suicide.

The facts in this case line up differently. Plaintiffs had ample suspicion of alleged foul play and inadequate investigation from the evening of Davis Warner's death. David Warner's affidavit states that he "repeatedly tried to contact the Ruidoso Police Department for information regarding the investigation of [his son]." Ex. 1 to Resp. Unlike the plaintiffs in both *Nicholas* and *Stump*, at least one of the Plaintiffs in the instant case (David Warner) was present at the tragic scene. In fact, David Warner was threatened with arrest "if he did not stay back from the scene." Compl. ¶ 10. David Warner wrote his first letter to the district attorney's office some time after December 6, 2007, although it is not clear when the letter was written. However, the complaint itself demonstrates that David Warner was sufficiently aware of facts which would assert a claim of inadequate investigation as of December 6, 2007 because these facts were known to and observed by David Warner on that evening: the absence of crime scene tape anywhere while "numerous others were all around the area causing evidence to be destroyed"; the absence of officers attempting to take statements from some of the witnesses present; not taking fingerprints from the weapon; taking inconsistent and false statements from witnesses; the fact that a large sum of money was missing from Davis Warner's person.

There is no need to apply the discovery rule here because Plaintiffs had knowledge of the same relevant facts which they allege in the complaint as of the night Davis Warner died. The

subsequent correspondence sent and received by David Warner after December 6th did not offer any facts or evidence necessary for Plaintiffs to have discovered before they knew or could have suspected that Defendants had conducted an inadequate investigation. In fact, rather than strengthening Plaintiffs' suspicion that the death was a homicide, Plaintiffs were informed finally that an investigation by the district attorney concluded that Davis Warner's death was an "accidental shooting." Resp., Ex. D. Thus, Plaintiff had a sufficient factual basis to proceed on their claim as of December 8, 2007, the day following the tragic incident.

**III.     Estoppel**

Plaintiffs also contend that Defendants should be estopped from invoking a statute of limitations defense. The doctrine of equitable estoppel is "applied against the state when right and justice demand it." *Hagen v. Faherty*, 133 N.M. 605, 609-10, 66 P.3d 974, 978 (N.M.App 2003). The essential elements of this doctrine, as related to the party estopped, are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

Estoppel is not available to Plaintiffs for the same reason Defendants' motion will be granted. There are no factual assertions in the complaint which suggest that Plaintiffs lacked the knowledge, or the means of gaining knowledge, necessary to file the complaint. Defendants put

11

it aptly:  Plaintiffs know nothing more today than they did the night of the shooting.

## Conclusion

In sum, I find and conclude that Plaintiffs have not alleged a viable claim based on the right of familial association, and that Defendants are entitled to dismissal of this claim.

I also find and conclude that Plaintiffs possessed an adequate factual basis to proceed on their claim as of December 6 or 7, following the tragic death of Davis Warner.  As a result, Defendants are entitled to summary judgment on all of Plaintiffs' state law tort claims.  Moreover, Plaintiffs are not entitled to equitable estoppel on Defendants' statute of limitations defense.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Constitutional Claims **(Doc. 4)**, and Defendants' Motion for Partial Summary Judgment on All of Plaintiffs' Tort Claims **(Doc. 5)** are hereby GRANTED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE